**DeCOTIIS, FITZPATRICK, COLE & GIBLIN LLP**
61 South Paramus Road, Suite 250
Paramus, New Jersey 07652
Tel: (201) 928-1100
Fax.: (201) 928-0588
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 825,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1233, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1235, AND INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1804-1,<br><br>Defendants. | Civil Action No. 2:23-cv-03689-KM-JRA<br><br><br>**AMENDED COMPLAINT** |

Plaintiff, the International Union of Operating Engineers Local 825 ("Local 825" or "Plaintiff"), by way of Amended Complaint against defendants, the International Longshoremen's Association ("ILA"), the International Longshoremen's Association Local 1233 ("Local 1233"), the International Longshoremen's Association Local 1235 ("Local 1235"), and the International Longshoremen's Association Local 1804-1 ("Local 1804-1") (Local 1233, Local 1235, and Local 1804-1 are, collectively, the "ILA Locals") (the ILA and ILA Locals are, collectively, "Defendants"), hereby states as follows:

1

## NATURE OF THE ACTION

1.      Plaintiff brings this action pursuant to Section 301 of the Labor-Management Relations Act of 1947 (the "LMRA" or "Taft-Hartley Act"), 29 U.S.C. §185, seeking legal, injunctive and equitable relief as a result of Defendants' violations of a contract between Plaintiff and Defendants.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 301 of the LMRA, 29 U.S.C. §185.

3.      Venue properly lies in this District pursuant to Section 301 of the LMRA, 29 U.S.C. §185. Additionally, venue properly lies in this District pursuant to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

4.      Local 825 is a "labor organization" as defined in Section 2(5) of the LMRA, 29 U.S.C. §152(5), and represents employees in an industry affecting commerce as defined in Section 502 of the LMRA, 29 U.S.C. § 142.

5.      ILA is a "labor organization" as defined in Section 2(5) of the LMRA, 29 U.S.C. §152(5), and has a principal place of business at 5000 West Side Avenue, North Bergen, New Jersey 07047.  Upon information and belief, ILA represents longshoremen, clerks, checkers, and maintenance employees working on ships and terminals in ports, including at Port Newark and Port Elizabeth in New Jersey.

6.      Local 1233 is a "labor organization" as defined in Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and has a principal of business at 19-33 Fenwick St. Newark, New Jersey

#3306840

07114.  Upon information and belief, Local 1233 represents longshoremen who work at Port Newark.

7.      Local 1235 is a "labor organization" as defined in Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and has a principal of business at 30 Hennessey Street, Newark, New Jersey 07105. Upon information and belief, Local 1235 represents longshoremen who work at Port Newark.

8.      Local 1804-1 is a "labor organization" as defined in Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and has a principal of business at 5000 West Side Avenue, North Bergen, NJ 07047. Upon information and belief, Local 1804-1 represents longshoremen and maintenance employees who work at Port Newark.

**FACTS COMMON TO ALL COUNTS**

**Background**

The Installation of New Container Cranes at Port Newark

9.      The present matter arises from the installation of two container cranes at the Port Newark Container Terminal that is located at 241 Calcutta Street, Newark, New Jersey (the "Terminal").

10.     Port Newark Container Terminal, LLC ("PNCT") is the operator of the Terminal. Upon information and belief, PNCT determined that it was necessary to install two new "Ship To Shore" container cranes (the "Cranes") at the Terminal, for purposes of (further) conducting PNCT's operations at the Terminal. Towards that end, sometime prior to December 2022, PNCT entered into a contract with Liebherr Container Cranes, Ltd. ("Liebherr"), whereby Liebherr agreed to manufacture, assemble and erect the Cranes at the Terminal, and PNCT agreed to pay Liebherr for those services.

3

Liebherr's Subcontract With Bay Crane Services, Inc.

11.     Liebherr, in turn, entered into a Subcontract with Bay Crane Services, Inc. ("Bay Crane"), whereby Bay Crane specifically agreed to provide labor, equipment, materials and services that were necessary to assemble and erect the Cranes at the Terminal. Upon information and belief, the services to be provided by Bay Crane included, *inter alia*: (a) assisting in unloading shipments of equipment for the Cranes, (b) painting the Cranes, (c) mechanical assembly of the Cranes, (d) electrical assembly of the Cranes, and (e) erection of the Cranes (the "Crane Project" or "Project").

Bay Crane's Collective Bargaining Agreement(s)

12.     At all times relevant herein, Bay Crane has been a party to a Collective Bargaining Agreement ("CBA") with Local 825. That CBA covers workers engaged in the operation of power equipment (as defined in the CBA), used in the construction, alteration and repair of buildings, structures, bridges, bridge approaches, viaducts, shafts, tunnels, subways, foundations, streets, highways, sewers, sewage disposal plants, filtering plants, incinerators, piers, docks, dams, dredging, port works, river and harbor improvements, pipelines, pipeline water crossings, temporary pipe fittings, sinking of wellpoints, all piping in connection with wellpoints, burning and welding, installing, repairing and maintaining of all equipment, fitting up, dismantling, repairing and maintaining and operating of machinery when done on the job, and such other work as by custom has been performed by workmen in the fields of construction outlined in the CBA (the "Covered Work"), anywhere within the State of New Jersey (including Port Newark).

4

13.     The CBA contains specific provisions governing wages, hours, manpower referrals, manpower staffing, manning and other working conditions of those Local 825 members that are employed by Bay Crane and perform Covered Work.

14.     The CBA was entered into for the purpose of, *inter alia*, preserving work traditionally performed by Local 825 operating engineers, including work that should be performed by Local 825 at Port Newark.

15.     Upon information and belief, Bay Crane is also a party to CBAs with other labor unions, including the International Union of Painters and Allied Trades, District Council 21, Local 1331 ("Painters Local 1331") and the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers Local No. 11 ("Iron Workers Local 11"). Upon further information and belief, these CBAs cover work that members of Painters Local 1331 and Iron Workers Local 11 perform for Bay Crane throughout the State of New Jersey, including work that the members of those unions perform for Bay Crane at Port Newark.

Bay Crane's Use of Unionized Labor for the Crane Project

16.     The Crane Project required the performance of Covered Work as defined by the CBA between Bay Crane and Local 825.

17.     Consequently, in January 2023, Bay Crane contacted Local 825 Business Representative Lino Santiago to generally discuss the nature of the Crane Project, as well as the equipment and labor required to complete the Project. In relation thereto, Bay Crane: (a) advised that the Crane Project was expected to take approximately twelve (12) to fourteen (14) weeks to complete, and (b) indicated that several Local 825 operators would be used to perform work on the Project.

#3306840

18.     Upon information and belief, the Crane Project likewise required the performance of work covered by: (a) the CBA between Bay Crane and Painters Local 1331, and (b) the CBA between Bay Crane and Iron Workers Local 11.

19.     Upon further information and belief, in or about January 2023, Bay Crane separately spoke with representatives of Painters Local 1331 and Iron Workers Local 11, to discuss the nature of the Project and the labor that Bay Crane would require from those unions to complete the Project.

**Defendants' Agreements With Local 825, Painters Local 1331 and Iron Workers Local 11**

20.     The ILA Locals perform work at Port Newark. Upon information and belief, this work includes maintenance, repairs and modifications of cranes located at the Port.

21.     Since the work to be performed on the Crane Project quite obviously involved cranes, Defendants, upon information and belief, sought to specifically delineate the scope and duration of the work that the members of Local 825, Painters Local 1331 and Iron Workers Local 11 would perform at the Project.

22.     Upon further information and belief, Defendants sought to delineate the scope and duration of this work for purposes of, *inter alia*, maintaining labor peace between Defendants and Local 825, Painters Local 1331 and Iron Workers Local 11.

23.     Consequently, upon information and belief, the ILA Locals caused and directed PNCT's Director of Engineering & Equipment Services, Calogero "Charlie" Ferlisi, to contact Bay Crane and inform it that Defendants required all other trade union locals (including Local 825, Painters Local 1331 and Iron Workers Local 11), to enter into an agreement with Defendants known as a Letter of Understanding (the "Agreement" or "LOU").

6

#3306840

24.     Upon information and belief, the specific purpose of this LOU was to identify both the scope and duration of the trade unions' work on the Project. Moreover, the LOU was significant to maintaining labor peace between Defendants and the other trade union locals working on the Project.

25.     On January 18, 2023, Mr. Ferlisi presented Bay Crane with Defendants' request for the LOU.

26.     On January 19, 2023, Bay Crane presented Local 825 with Defendants' request for the LOU.

27.     On February 1, 2023, Local 825 accepted Defendants' request, and entered into the LOU with Defendants.

28.     Consistent with the LOU's intended purpose, the LOU between Local 825 and Defendants expressly stated that it "is being provided to the International Longshoreman Association ('ILA') to confirm that Local 825 signatory(s) have been hired by OEM [original equipment manufacturer] Liebherr…to erect, assemble and weld 2 Ship to Shore cranes arriving at PNCT starting March 2023."  Concomitantly, the LOU explicitly stated and "verif[ied] that Local 825 will not retain any jurisdiction for future maintenance, repairs or modifications to this equipment outside of the contracted scope of this [P]roject, and once the cranes have been commissioned and accepted by PNCT."

29.     Through the LOU, Defendants acknowledged and agreed that Local 825 members – employed by Bay Crane – would perform all Covered Work at the Project that was required by the subcontract between Liebherr and Bay Crane. Defendants further acknowledged and agreed "once the [C]ranes ha[d] been commissioned and accepted by PNCT," Local 825 would "not [have] any jurisdiction for future maintenance, repairs or modifications to" the Cranes.

7

#3306840

30.     Painters Local 1331 likewise entered into an LOU with Defendants. This LOU likewise stated that Painters Local 1331 had "been hired by OEM Liebherr…to erect, assemble and weld 2 Ship to Shore cranes arriving at PNCT starting March, 2023."  This LOU correspondingly stated and "verif[ied] that…Painters Local 1331 will not retain any jurisdiction for future maintenance, repairs or modifications to this equipment outside of the contracted scope of this [P]roject, and once the cranes have been commissioned and accepted by PNCT."

31.     Iron Workers Local 11 also entered into an LOU with Defendants. This LOU similarly stated that Iron Workers Local 11 had "been hired by OEM Liebherr…to erect, assemble and weld 2 Ship to Shore cranes arriving at PNCT starting March, 2023."  This LOU likewise stated and "verif[ied] that…Iron Workers Local 11 will not retain any jurisdiction for future maintenance, repairs or modifications to this equipment outside of the contracted scope of this [P]roject, and once the cranes have been commissioned and accepted by PNCT."

32.     Upon information and belief, Bay Crane provided *each* of these LOUs to PNCT and Defendants, no later than February 1, 2023.

**Defendants' Breach of Its Agreement with Local 825**

33.     In or about March 2023, Bay Crane commenced work at the Project with Local 825 members. During the period from March 2023 to June 2, 2023, Local 825 performed its work at the Project without disruption or interference. However, on or before June 2, 2023, Defendants breached their LOU with Local 825 by engaging in efforts to remove (or cause the removal of) Local 825 members from the Crane Project.

34.     Upon information and belief, no later than June 2, 2023, Defendants told PNCT (or otherwise caused PNCT to believe) that Defendants would strike or otherwise stop all work

8

#3306840

at Port Newark unless: (a) Local 825 workers were removed from the Project, and (b) ILA workers were allowed to perform Local 825's work at the Project.

35.     Upon further information and belief, no later than June 2, 2023, Defendants also directed or caused PNCT to: (a) stop all work at the Project, and (b) inform Bay Crane that *all* Local 825 operators must leave the Project immediately due to a labor dispute between the ILA and the International Union of Operating Engineers ("IUOE") – a dispute that did *not* involve Local 825, the ILA Locals, PNCT, or the Project.

36.     As Defendants demanded, PNCT: (a) informed Bay Crane that all work was stopped at the Project, and (b) told Bay Crane to remove all Local 825 operators from the Project. PNCT *also* cancelled any further work involving Local 825 or Local 825 support at the Project.

37.     Bay Crane, in turn, informed Local 825 of PNCT's work stoppage. Bay Crane further advised Local 825 that all Local 825 operators must leave the Project immediately due to "some sort of dispute, somewhere in the PNCT corporate universe between ILA and IUOE."

38.     On June 5, 2023, Business Representative Santiago informed PNCT that Local 825 was ready, willing and able to immediately resume work at the Project, pursuant to the scope of work specified in the LOU between Defendants and Local 825.

39.     On June 6, 2023, Business Representative Santiago informed Bay Crane that Local 825 did not stop the work and that Local 825 was committed to fulfilling the work under the terms of the LOU between Defendants and Local 825.

40.     However, upon information and belief, Defendants continued to threaten PNCT with a strike or other work stoppage, in order to force PNCT to cease doing business with Local 825 and Local 825 signatory contractors.

#3306840

41.     Indeed, Defendants' threats and coercion extended to *all* PNCT business at Port Newark involving Local 825 members and signatory contractors.

42.     For instance, PNCT had entered into a contract with Local 825 signatory contractor Top Line Construction Corp. ("Top Line"), to perform milling and paving work as part of PNCT's "2023 Pavement Maintenance" project. However, on or before June 9, 2023, PNCT advised Top Line that Local 825 members were not allowed at the Terminal due to the ongoing "dispute [involving ILA] related to work on another terminal." PNCT thus canceled Top Line's milling and paving work that was scheduled for June 9, 2023 and placed all of Top Line's work on hold until further notice.

43.     Similarly, in or before June 2023, PNCT participated in telephone calls with Local 825 signatory contractor Bruce R. Koerner Cranes & Equipment ("Koerner"), for purposes of renting a crane. During those calls, PNCT asked Koerner whether it was a signatory of Local 825.   Upon confirming that Koerner was signed with Local 825, PNCT informed Koerner that Local 825 operators were not allowed at their facilities due to a dispute with the ILA and that PNCT would rent cranes elsewhere.

44.     Upon information and belief, Defendants are also attempting to coerce Bay Crane into utilizing ILA operators (instead of Local 825 operators) to complete the Project.

45.     Bay Crane opposed Defendants' efforts. Upon information and belief, when Bay Crane opposed Defendants' efforts to complete the Project with ILA members, Defendants began to pressure PNCT to fire Bay Crane from the Project and to contract with a crane company not affiliated with Local 825 or bound to Local 825's CBA to complete the Project. In this regard, PNCT has brought Buckner Heavylift Cranes from North Carolina and Pennsylvania

#3306840

Crane Company from Pennsylvania to the Project, in an attempt to completely remove Bay Crane (and its Local 825 operators) from the Project.

46.     Upon information and belief, Defendants suggested to PNCT that an assignment of the work to ILA members would be the only way the Project could be completed without triggering the threatened work stoppage. In this regard, Defendants offered temporary membership in Local 1804-1 to facilitate the hiring of non-Local 825 members to complete the Project.

47.     Upon information and belief, as a result of Defendants' actions, PNCT directed Liebherr to terminate Bay Crane from the Project if Bay Crane continues to refuse to use ILA members to complete the Project. Upon further information and belief, Liebherr honored PNCT directive and issued a notice to Bay Crane, advising that Bay Crane's services at the Project would be terminated effective July 21, 2023. However, the notice further indicated that Bay Crane would be allowed to continue working on the Project *if* Bay Crane utilized ILA members to complete the Project work.

48.     The conduct of Defendants is designed to force PNCT to assign work to a contractor signed with the ILA and not with Local 825, in breach of the LOU.

49.     As a result of Defendants' campaign to deny agreed-upon work in accordance with the LOU, Local 825 has suffered and will continue to suffer damages.  Local 825 members have lost work opportunities, wages and benefits.

50.     Additionally, Local 825 employees will lose future wages and benefits because of Defendants' efforts to prevent Local 825 employees and Local 825's signatory contractors from working at the Project and at other PNCT projects at other ports.

11

#3306840

51.     Because Defendants' conduct was willful and malicious, they are also liable for punitive damages to Local 825.

52.     Upon information and belief, Defendants have *not* attempted to disrupt or otherwise interfere with the work being performed by Painters Local 1331 and Iron Workers Local 11 at the Project.

## FIRST COUNT

## BREACH OF LABOR AGREEMENT BETWEEN LOCAL 825 AND ILA

53.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 52 of the Complaint as if fully set forth at length hereafter.

54.     Section 301(a) of the LMRA, 29 U.S.C. § 185(a), allows labor organizations representing employees in an industry affecting commerce to bring suits for violations of contracts between labor organizations.

55.     The LOU between Defendants and Local 825 is a "contract" that falls within the scope of Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

56.     Pursuant to the LOU, Defendants expressly acknowledged and agreed that Local 825 members (employed by Bay Crane) would perform all Covered Work at the Project that was required by the subcontract between Liebherr and Bay Crane. Defendants further acknowledged and agreed "once the [C]ranes ha[d] been commissioned and accepted by PNCT," Local 825 would "not [have] any jurisdiction for future maintenance, repairs or modifications to" the Cranes.

57.     Covered Work remains to be completed at the Project.

58.     Since Covered Work remains to be completed, the Cranes have *not* been commissioned and accepted by PNCT.

#3306840

59.     In breach of their obligations under the LOU, Defendants have attempted to secure for *their* members the Covered Work that Local 825 is to perform at the Project pursuant to the subcontract between Liebherr and Bay Crane.

60.     As a result of Defendants' breach of their obligations under the LOU, Local 825 members have been wrongly deprived of work opportunities and have lost wages and benefits.

61.     Local 825 has demanded that Defendants cease their breach of the LOU, but Defendants have neglected, failed and refused, and continue to neglect, fail and refuse, to cease their breach.

62.     As a result of Defendants' breach of the LOU, Local 825 has suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Local 825 demands judgment against Defendants on the First Count of the Complaint:

a.     Restraining and permanently enjoining Defendants from violating the LOU, and adjudging Defendants bound by the terms of the LOU;

b.     Granting judgment in favor of Local 825 for money damages in the amount of lost wages, benefits (plus interest, liquidated damages and audit fees), dues, and assessments for all affected bargaining unit members of Local 825;

c.     For specific performance of the LOU;

d.     Pre-judgment interest;

e.     Post-judgment interest;

f.     Reasonable attorneys' fees and costs of suit; and

#3306840

g.       For such other and further relief that this Court deems equitable, just and proper.


Dated: July 19, 2023          By:      /s/ *Vincent M. Giblin*
                                                      Vincent M. Giblin, Esq.
                                                      **DeCOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
                                                      61 South Paramus Road, Suite 250
                                                      Paramus, New Jersey 07652
                                                      Tel: 201-928-1100
                                                      Fax: 201-928-0588
                                                      E-mail: VGiblin@decotiislaw.com
                                                      *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, and is not the subject of any pending arbitration or administrative proceeding. I am not currently aware of any other party who should be joined in this action.

I certify under penalty of perjury that the foregoing is true and correct.   Executed on this 19th day of July, 2023.


                                                  /s/ *Vincent M. Giblin*
                                                  Vincent M. Giblin, Esq.
                                                  **DeCOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
                                                  61 South Paramus Road, Suite 250
                                                  Paramus, New Jersey 07652
                                                  Tel: 201-928-1100
                                                  Fax: 201-928-0588
                                                  E-mail: VGiblin@decotiislaw.com
                                                  *Attorneys for Plaintiff*

#3306840