John P. Sheridan
Nicholas M. Graziano
Brian A. Jasinski
MAZZOLA MARDON, P.C.
26 Broadway, 17th Floor
New York, NY 10004
(212) 425-3240
jsheridan@mmmpc.com
ngraziano@mmmpc.com
bjasinski@mmmpc.com

*Attorneys for Defendants International
Longshoremen's Association, ILA Local
1804-1, ILA Local 1233 and ILA Local 1235*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------------------X

INTERNATIONAL UNION OF OPERATING            :
ENGINEERS, LOCAL 825,                        :
                                             :
                    Plaintiff,               :
                                             :
        v.                                   :        Civil Action No.
                                             :        2:23-cv-03689
INTERNATIONAL LONGSHOREMEN'S                 :
ASSOCIATION, INTERNATIONAL                   :
LONGSHOREMEN'S ASSOCIATION LOCAL 1233,       :        **MOTION DATE**
INTERNATIONAL LONGSHOREMEN'S                 :        **October 16, 2023**
ASSOCIATION 1235, and INTERNATIONAL          :
LONGSHOREMEN'S ASSOCIATION LOCAL 1804-1,     :
                                             :
                    Defendants.              :
                                             :
                                             :
------------------------------------------------------------------------X


**REPLY BRIEF OF DEFENDANTS**
**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,**
**ILA LOCAL 1804-1, ILA LOCAL 1233, AND ILA LOCAL 1235**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

   I     DISMISSAL OF THE AC IS WARRANTED BECAUSE
        THERE ARE NO ALLEGATIONS THAT SHOW A VALID OFFER,
        ACCEPTANCE, MUTUAL ASSENT, OR CONSIDERATION ................................... 4

   II    PLAINTIFF HAS FAILED TO ALLEGE A BREACH OF THE
        PURPORTED CONTRACT BEYOND A SPECULATIVE LEVEL ........................... 9

   III   PLAINTIFF HAS FAILED TO PLEAD A PRAYER FOR RELIEF BECAUSE
        PLAINTIFF CANNOT RECOVER DAMAGES OR RECEIVE AN INJUNCTION . 10

CONCLUSION..................................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 9

*Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers' Union*,
  835 F.2d 1164 (6th Cir. 1987) ............................................................................................... 5, 6

*Boys Markets, Inc. v. Retail Clerks Union, Local 770,*
  398 U.S. 235 (1970) ................................................................................................................. 12

*Catalytic, Inc. v. Monmouth & Ocean County Bldg. Trades Council*,
  829 F.2d 430 (3d Cir. 1987) ..................................................................................................... 12

*Coyle v. Englander's*, 199 N.J. Super. 212 (App. Div. 1985) ....................................................... 3

*Doubarn Sheet Metal, Inc. v. Sheet Metal Workers' Intern. Ass'n,*
  *Local No. 19*, 547 F.2d 221 (3d Cir. 1977) ................................................................................ 5

*Drywall Tapers Local 1974 v Local 530 of Op. Plasterers*
  *& Cement Masons, Int'l*, 36 F.3d 235 (2d Cir. 1994) ............................................................. 11

*F.W. Means Co. v. NLRB*, 377 F.2d 683 (7th Cir. 1967) .............................................................. 2

*Gambrell v. S. Brunswick Bd. of Educ.*, No.: 18-cv-16359 (PGS)(ZNQ),
  2019 WL 5212964 (D.N.J. Oct. 16, 2019) ............................................................................... 10

*Gen. Warehousemen & Emp. Union Local No. 636*
  *v. J.C. Penney Co.*, 484 F. Supp. 130 (D.Pa., 1980) .................................................................. 2

*In re BlockFi, Inc.*, No. 22-19361 (MBK), 2023 WL 5597165 (Bkrtcy.D.N.J., 2023) ................. 7

*Int'l Ass'n of Iron Workers, Local 63 v. Glaziers Glass Workers, Local 27,*
  40 F. Supp. 2d. 997 (N.D. Ill. 1999) ........................................................................................ 11

*Local 56, United Food & Com. Workers v. Campbell Soup Co.*,
  898 F. Supp. 1188 (D.N.J. 1995) ............................................................................................ 3, 9

*Local No. 1547, Int'l Bhd. of Elec. Workers v. Local 959,*
  *Int'l Bhd. of Teamsters*, 507 F. 2d 872 (9th Cir. 1974) ........................................................... 11

*Mack Trucks, Inc. v. UAW*, 856 F.2d 579 (3d Cir. 1988),
  *cert. denied*, 489 U.S. 1054 (1989) .................................................................................... 4, 5, 6

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) ....................................................................... 10

*Merk v. Jewel Food Stores*, 945 F.2d 889 (7th Cir.1991) ............................................................. 11

*Moore-Duncan v. Sheet Metal Workers Int'l Ass'n, Local 27,*
    624 F. Supp. 2d 367 (D.N.J. 2008) ...................................................................................... 12

*NLRB v. Deauville Hotel*, 751 F.2d 1562 (11th Cir. 1985) ........................................................ 6

*NLRB v. New York-Keansburg-Long Branch Bus Co.,*
    578 F.2d 472 (3d Cir. 1978)................................................................................................... 4

*Rae v. United Parcel Serv. of Pa.*, 356 F. Supp. 468
    (E.D. Pa. 1973)........................................................................................................................ 2

*Retail Clerks Int'l Ass'n Local Union Nos. 128 & 633*
    *v. Lion Dry Goods, Inc.*, 369 U.S. 17 (1962) ....................................................................... 5

*Scotto v. United States*, No. 23-CV-0541, 2023 WL 4852308
    (E.D. Pa. July 28, 2023)....................................................................................................... 10

*Sheet Metal Workers Int'l Ass'n Local Union No. 27*
    *v. E.P. Donnelly, Inc.*, 737 F.3d 879 (3d Cir. 2013) ........................................................... 3

*Stricklin v. United States*, No. 21-04511, 2022 WL 597031
    (N.D. Cal. Feb. 28, 2022)..................................................................................................... 10

*United Steelworkers v. Fort Pitt Steel Casting,*
    452 F. Supp. 886 (W.D. Pa. 1978)........................................................................................ 12

*Warehouseman's Local No. 206 v. Cont'l Can Co.,*
    821 F.2d 1348 (9th Cir. 1987) ............................................................................................... 4

*Wilkes Barre Printing Pressmen & Assistants Union, No. 137*
    *v. Great N. Press*, 522 F.Supp. 106 (M.D. Pa. 1981) ......................................................... 4

**Statutes**

29 U.S.C. § 185................................................................................................................... 2, 3, 5, 11
29 U.S.C. § 185(a) ...................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................................... 1
Fed. R. Civ. P. 2(b)(1)................................................................................................................. 1

**Miscellaneous**

*Restatement (Second) Contracts* § 23, comment b (1981) ............................................................ 4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
-----------------------------------------------------------------------X
INTERNATIONAL UNION OF OPERATING          :
ENGINEERS, LOCAL 825,                     :
                                          :
                    Plaintiff,            :
                                          :
           v.                             :
                                          :
INTERNATIONAL LONGSHOREMEN'S              :
ASSOCIATION, INTERNATIONAL                :
LONGSHOREMEN'S ASSOCIATION LOCAL 1233,    :
INTERNATIONAL LONGSHOREMEN'S              :
ASSOCIATION 1235, and INTERNATIONAL       :
LONGSHOREMEN'S ASSOCIATION LOCAL 1804-1,  :
                                          :
                    Defendants.           :
                                          :
-----------------------------------------------------------------------X
```

Civil Action No.
2:23-cv-03689

**MOTION DATE**
**October 16, 2023**

**REPLY BRIEF OF DEFENDANTS**
**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,**
**ILA LOCAL 1804-1, ILA LOCAL 1233, AND ILA LOCAL 1235**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

**INTRODUCTION**

Defendants International Longshoremen's Association, ("International"), ILA Local 1804-1 ("Local 1804-1"), ILA Local 1233 ("Local 1233"), and ILA Local 1235 ("Local 1235") (collectively, "Defendants" or "ILA Unions") submit this Reply Brief in further support of their motion to dismiss the Amended Complaint ("AC") filed by Plaintiff International Union of Operating Engineers, Local 825's ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

---

[1] References to Plaintiff's Brief in support of its Opposition to Defendants' Motion to Dismiss will be cited as "Opp. at __."

The ILA Unions' principal brief demonstrated that Plaintiff failed to allege sufficient facts to indicate the existence of an actual contract between any of the ILA Unions and the Plaintiff.  Plaintiff's opposition brief quibbles with various points of the ILA Unions' legal analysis but fails to deal with the fatal flaw in its case:  there simply is no contract between the Plaintiff and the ILA Unions.

## ARGUMENT

Plaintiff first argues that the existence of a contract is not jurisdictional under Section 301.  Regardless, Plaintiff concedes that the existence of the contract is still an element of a Section 301 claim.  Opp. at 5.  Moreover, its argument in opposition does not challenge or clear up any of the factual deficiencies pointed out by the ILA Unions' brief.

Similarly, Plaintiff also argues at length that Section 301 claims are governed by federal common law as opposed to New Jersey law, but Plaintiff does not point out any key differences between these two legal sources. *See, e.g.*, *Rae v. United Parcel Serv. of Pa.*, 356 F. Supp. 465, 468 (E.D. Pa. 1973) ("It is axiomatic that, to show a contract violation, one must first have a contract or at least an agreement in force").  And to establish a violation of a contract in a Section 301 action, the plaintiff must still allege (1) the existence of a valid contract "containing certain terms" (*i.e.*, language that reflects an offer, acceptance, consideration, and mutual assent and intent to be bound), *see Gen. Warehousemen & Emp. Union Local No. 636 v. J.C. Penney Co.*, 484 F. Supp. 130, 135 (D.Pa., 1980) ("Although the technical rules of contract do not necessarily control all decisions in labor management cases, normal rules of offer and acceptance are determinative of the existence of a bargaining agreement.") (*quoting F.W. Means Co. v. NLRB*, 377 F.2d 683 (7th Cir. 1967)); (2) a failure of the defendant to perform its obligations under the contract, *Local 56, United Food & Com. Workers v. Campbell Soup Co.*, 898 F. Supp.

2

1188, 1137-38 (D.N.J. 1995) (no breach of CBA for change to health care benefits when CBA was silent on benefits that employer had to provide); and (3) a causal relationship between the breach and the plaintiff's alleged damages, *Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 199 N.J. Super. 212 (App. Div. 1985)).   In fact, Plaintiff admits in its brief that the first element of a Section 301 claim is identical to that of a state-law breach of contract claim:   namely, the existence of a contract (*see* Opp. at 8), and Plaintiff's allegations fail to show that first element.

As the ILA Unions already demonstrated, the so-called "LOU" does not contain sufficient detail to establish the mutually assented obligations constituting a contract.  Nothing Plaintiff argues changes that.  Indeed, Plaintiff concedes as much in its brief: "Defendants ask this Court to deny the existence of a contract merely because the LOU does not specify their obligations under the terms of the agreement and because they did not sign it.  But neither the allegations of the amended complaint nor the express language of the LOU itself claim to embody the entirety of the agreement."  Opp. at 14.  But if the LOU does not embody the entirety of the agreement, and there are documents other than the LOU that spell out with specificity the ILA Unions' supposed "obligations under the terms of the agreement," then the fact that Plaintiff has neither attached them nor even quoted them by now is fatal to Plaintiff's Section 301 claim.[2]  In place of writing, Plaintiff tries to manufacture obligations and assent from the ILA Unions' inaction, but this Court should not read into Plaintiff's strained inferences.

---

[2] It also points to the conclusion that no such documents exist.

1003-611
135977

# I

## DISMISSAL OF THE AC IS WARRANTED BECAUSE THERE ARE NO ALLEGATIONS THAT SHOW A VALID OFFER, ACCEPTANCE, MUTUAL ASSENT, OR CONSIDERATION

Plaintiff argues that labor contracts subject to Section 301(a) are afforded greater deference in their formation for the sake of promoting industrial peace, and, as a result, "[t]here is nothing requiring such agreement to be put into writing, or even that it be signed. . . ." Opp. at 15. Yet, in support of this contention, Plaintiff does not cite to Federal common law but, instead, quotes the Restatement (Second) of Contracts for the proposition that "unintended appearance of assent" may be inferred from conduct. *Restatement (Second) Contracts* § 23, comment b (1981). Plaintiff argues that because Defendants allowed Plaintiff's members to work on the cranes for over two months, Defendants' conduct—or more precisely, inaction—evidenced Defendants' agreement to refrain from interfering with the Plaintiff's work on the cranes going forward until Plaintiff decided that the work was finished.

The law in this Circuit requires much more than inaction to establish assent and intent. "In order to reach a labor agreement, the parties must establish a meeting of the minds and demonstrate that the parties agreed on the substantive terms and conditions of the contract." *Mack Trucks, Inc. v. UAW*, 856 F.2d 579, 592 (3d Cir. 1988), *cert. denied*, 489 U.S. 1054 (1989) (citing *NLRB v. New York-Keansburg-Long Branch Bus Co.*, 578 F.2d 472, 477 (3d Cir. 1978) (internal citations omitted). "The parties' objective intent to create a contract is relevant—not their subjective beliefs." *Mack Trucks*, 856 F.2d at 592 (citing *Warehouseman's Local No. 206 v. Cont'l Can Co.*, 821 F.2d 1348, 1350 (9th Cir. 1987); *see also Wilkes Barre Printing Pressmen & Assistants Union, No. 137 v. Great N. Press*, 522 F. Supp. 106, 111 (M.D. Pa. 1981) ("[L]abor agreements are governed by the 'objective theory' of contracts. In other words, the

4

central inquiry for the court is whether the actual conduct of [employer and union] would have manifested offer and acceptance to a reasonable observer, regardless of the subjective intent of the negotiators"). When determining whether a valid labor contract was formed, "courts look to the surrounding circumstances and to the parties' 'conduct manifesting an intention to abide by agreed-upon terms.'" *Mack Trucks*, 856 F.2d at 592 (*quoting Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers' Union*, 835 F.2d 1164, 1168 (6th Cir. 1987)) (internal citations omitted).

Indeed, the very cases cited by Plaintiff illustrate that a Section 301 contract is necessarily quite detailed about the parties' mutual obligations. *Retail Clerks* involved an agreement reached between competing unions and an employer setting forth various terms and obligations among the three parties; namely (1) the employer's promise to rehire striking employees; (2) "detailed wage and hour schedules" that the members of the bargaining unit would receive; and, most importantly, (3) the employer's commitment to follow the overarching CBA's grievance procedure. *Retail Clerks Int'l Ass'n Local Union Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 23 (1962). Likewise, in *Doubarn*, the Third Circuit evaluated the very specific and certain terms of a "Standard Form Union Agreement" negotiated **between a multiemployer bargaining association of sheet metal employers and an international-level labor organization** over which local-level union performs the work in a given geographical location. *Doubarn Sheet Metal, Inc. v. Sheet Metal Workers' Intern. Ass'n, Local No. 19*, 547 F.2d 221, 224 (3d Cir. 1977). The local unions and employer in *Doubarn* had incorporated this Standard Form Union Agreement and "the precise terms of the Standard Form provisions covering work by outside contractors" into their CBAs. *Id.* at 224-25. Plaintiff argues that *Doubarn* shows that Defendants' signature on the LOU is not necessary to show Defendants' assent, but Defendants never argued that a signature was **required** to show a meeting of the

5

minds and, unlike *Doubarn* where the obligations were incorporated in the CBAs, the AC alleges **no** facts to show Defendants assented to any obligation to the Plaintiff.

*Mack Trucks* is also markedly distinguishable from the instant matter.  In *Mack Trucks*, the Third Circuit held that the parties' conduct manifested an objective intent to be bound after the parties to a collective bargaining agreement held numerous in-person bargaining sessions over a period of months, which concluded with a "'handshake meeting,' congratulat[ing] each other on reaching a new agreement and discuss[ing] forthcoming ratification plans."  *Mack Trucks*, 856 F.2d at 592 (citing *Bobbie Brooks*, 835 F.2d at 1169 (agreeing with district court's reasoning that the "tone and temperament of the parties at the conclusion of the . . . meeting suggested that a binding agreement had been reached. . ..")).

Following the handshake meeting, "an overwhelming majority of the affected UAW members voted to ratify the new agreement.  Union ratification is generally considered to be 'the last act necessary . . . to create a meeting of the minds and an enforceable agreement.'"  *Id.* (quoting *NLRB v. Deauville Hotel*, 751 F.2d 1562, 1569 n. 10 (11th Cir. 1985)).  The Third Circuit held that "the ratification vote, supported by the words and conduct of UAW officials, provide overwhelming evidence that the parties reached a meeting of the minds as of [the handshake meeting where they discussed forthcoming ratification plans]."  856 F.2d at 593.  The situation in this case cannot be more different.

Plaintiff has never met any ILA representatives in person, nor did they speak on the phone, nor did they even email each other directly.  To address this deficiency, Plaintiff has submitted an email from PNCT in which Plaintiff says PNCT was acting as Defendants' agent. Plaintiff argues:

> Defendants' conduct as alleged in the Amended Complaint is
> sufficient to infer they manifested an intent to be bound to the

> terms of the LOU.  The Defendants requested Local 825 submit an
> LOU specifically limiting the scope of the work it would be
> entitled to perform at Port Newark.  This request – made through
> PNCT, an agent Defendants conferred with the authority to
> negotiate the agreement at issue – effectively constituted an offer.

Opp. at 14; *see also* Am. Compl., ¶¶ 25-27.  Even assuming that Plaintiff subjectively believed that PNCT was an agent of one the ILA Unions, the January 18, 2023, email on its face does not objectively manifest an intent to be bound.  The email does not contain essential terms and conditions for it to constitute an offer and, as such, does not invite acceptance.

First, it is not at all clear on whose behalf the email is sent.  An essential element of an offer is that the offeree knows who the offeror is.  But this email is sent from PNCT to Bay Crane, and then forwarded to Plaintiff.  PNCT's email says to Bay Crane that "our ILA local is looking for the trade union locals to provide a letter of understanding."  But the email does not specify which ILA local the email is referring to, and no ILA entity is copied.  So even if PNCT was acting as an agent, it is not clear who the principal is.  Each of the Defendants are separate legal entities; simply because ILA Local 1233 chooses to enter into a contract does not mean that ILA Local 1235 has incurred any obligations—and *vice versa*.  Thus, the email cannot be a valid offer because it has omitted an essential term:  the identity of the supposed offeror.  *See In re BlockFi, Inc.*, 2023 WL 5597165, at *5 (Bkrtcy. D.N.J., 2023) ("Given that the price of BTC— an essential element of the agreement—was not established, it is unclear whether the March 24 email from BlockFi was definite enough to constitute an offer").  This insufficiency in the purported contract is borne out by this very lawsuit.  Plaintiff does not know which entity it supposedly has a contract with, so it has sued three separate ILA locals, plus the International. The lack of clarity about which entity is the supposed offeror is enough to render the email deficient as an offer.

1003-611
135977

As observed in the ILA Unions' initial brief, other essential elements are missing as well. All the promises and obligations are made by the Plaintiff; there are no promises made by any of the ILA entities in the email. Likewise, Plaintiff's alleged "acceptance" falls woefully short of objectively manifesting an intent to be bound. First, even though PNCT's email mentions an "ILA local," without specifying which one, the "LOU" drafted by Plaintiff is addressed not to any ILA local, but apparently to the ILA International. Again, there is absolutely no clarity as to which ILA entity is supposed to be bound by this supposed agreement. As already discussed in the initial brief, it is not at all clear whether the "LOU" was even delivered to an ILA entity. Conversely, the parties in *Mack Trucks* left nothing open to interpretation – they met with each other in person several times over the course of months, and their words and actions objectively manifested clear and unequivocal mutual assent. Unlike *Mack Trucks*, there are no allegations here directly linking the parties, either in person, by telephone, or by direct email.

Although Plaintiff contends that it "has alleged sufficient facts to reasonably infer the existence of a contract between the parties under either federal common law or New Jersey contract principles" (Opp. at 15), as discussed more fully in the Defendants' principal brief, there are no words or conduct clearly and overtly manifesting a meeting of the minds and indicating to a reasonable observer that the parties agreed on any substantive terms and conditions. Plaintiff does not allege that it has negotiated or communicated with Defendants, or even communicated to Defendants or PNCT its "acceptance" of Defendants' alleged "offer," or instructed PNCT, the Defendants' alleged agent, to furnish the "contract" to Defendants. Because Plaintiff has not alleged the existence of a valid, binding contract, it has failed to state a claim for relief.

1003-611
135977

II

## PLAINTIFF HAS FAILED TO ALLEGE A BREACH OF THE
## PURPORTED CONTRACT BEYOND A SPECULATIVE LEVEL

As the ILA Unions already argued in their initial brief, since the LOU imposes no obligations on any of the ILA Unions, they could not have breached those non-existent obligations.  Moreover, since there is nothing in the LOU describing the length of any obligation, even if there was some implied obligation to refrain from interfering with Plaintiff's work on the crane project, there is nothing that says the obligation will continue forever.  If a contract has no termination clause, then it is terminable at will.  Moreover, even if one ILA entity had agreed to incur an obligation, that does not mean that the other three did.  The AC is not at all clear which of the four ILA unions was the allegedly obliged entity, which was the allegedly breaching entity, and most importantly, whether the obliged entity was the one which breached the LOU.

Moreover, the AC's allegations about the alleged breach are too speculative to plausibly allege a breach.  To avoid dismissal the AC must contain "[f]actual allegations [that] raise [Plaintiff's] right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Setting aside the fact that Plaintiff has failed to allege any provision of the LOU which sets forth the obligations of the Defendants for them to breach (*see Local 56, United Food & Commc'l Workers*, 898 F. Supp. at 1137-38), Plaintiff's arguments that one or more of the ILA Defendants have breached the LOU (*see* Opp. at 15-16) do not rise above this speculative level.

- Paragraph 33 of the AC first alleges a legal conclusion that the LOU is a binding contract.  It then alleges that any one of the four ILA Unions, and a representative of any one of these four unions, engaged in unspecified "efforts" to remove Plaintiff from the project;

- Paragraph 34 again speculates that an unnamed agent of any one of the four Defendants spoke to an unnamed representative of PNCT; and

9

- • Paragraph 35 alleges that this occurred at some unspecified time between March 2023 and June 2023.

In this Circuit, plaintiff's complaint must "tell the story of what . . . happened. . . and provide the reader with a chronology" by stating "the who, what, when, where, why, and how of [the] claims" and "provid[ing] specific facts [that] explain what happened in support of [the] causes of action." *Scotto v. United States*, No. 23-cv-0541, 2023 WL 4852308 (E.D. Pa. July 28, 2023) (*quoting Stricklin v. United States*, No. 21-cv-04511, 2022 WL 597031, at *2 (N.D. Cal. Feb. 28, 2022); *Gambrell v. S. Brunswick Bd. of Educ.*, No.: 18-cv-16359 (PGS)(ZNQ), 2019 WL 5212964 (D.N.J. Oct. 16, 2019) (holding dismissal of complaint is required when it "lacks any facts to explain the who, what, where, when and why of plaintiff's dissatisfaction. . ..").

The allegations within the AC do not state who the ILA representative that contacted PNCT was, what specifically that representative said, where the discussion between the ILA Union(s) and PNCT occurred, nor when—aside from a general three-month period—the discussion occurred. Am. Compl., ¶¶ 33-37. The allegations from ¶¶ 41-47 similarly omit this necessary information. Thus, Plaintiff has not pleaded the "who, what, when, where, why, and how" of its cause of action and has failed to raise its allegations of a breach of the LOU beyond a speculative level. *Gambrell*, 2019 WL 5212964, at *3.

### III

### PLAINTIFF HAS FAILED TO PLEAD A PRAYER FOR RELIEF BECAUSE PLAINTIFF CANNOT RECOVER DAMAGES OR RECEIVE AN INJUNCTION

Though courts "must accept all factual allegations in the complaint as true, and construe the complaint in the light favorable to the plaintiff", *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010), they must also "ultimately determine whether plaintiff may be entitled to relief. . . ".

Even if the LOU was a contract within the meaning of Section 301 – which it is not – and the AC plausibly alleged a breach of the LOU – it does not – the AC must still be dismissed because Plaintiff cannot recover the compensatory damages or equitable relief sought by the AC. [3]

In the initial brief, the ILA Unions cited to *Drywall Tapers Local 1974* and *Local No. 1547, Int'l Bhd. of Elec. Workers* to demonstrate why damages are unavailable in alleged interunion contractual disputes such as this one here.  First, in *Drywall Tapers*, the district court looked to the express terms of the National Plan, a jurisdictional agreement between the two unions, to determine if the agreement permitted damages.  *Drywall Tapers Local 1974 v Local 530 of Op. Plasterers & Cement Masons, Int'l*, 36 F.3d 235, 239-40 (2d Cir. 1994).  Because it was silent, the district court ruled that compensatory damages were not an available remedy, and the circuit affirmed.  *Id.*  The LOU here is similarly silent.

Plaintiff's brief acts as though *Local No. 1547* supports its position, but in truth it is even **less** helpful to Plaintiff.  *See Local No. 1547, Int'l Bhd. of Elec. Workers v. Local 959, Int'l Bhd. of Teamsters*, 507 F. 2d 872, 878-79 (9th Cir. 1974).  In that case, two competing unions fought for certification to represent a unit of employees, even though the two unions had entered into a mutually reciprocal "no-raid agreement" which provided "that neither union would organize or represent employees 'in any situation where an established collective-bargaining relationship exists with the other union.'"  *Id.* at 873.  When one union organized and filed a petition to represent the other's employees and the Board certified the raiding union as representative, the raided union filed a lawsuit under Section 301.  *Id.*  The NLRB intervened in the proceeding, arguing that the district court lacked jurisdiction in a private, collateral 301 action, to review a

---

[3] Plaintiff's prayer in ¶ 51 of the AC for punitive damages has been waived, as Plaintiff has not opposed the Defendants' arguments that Plaintiff failed to allege "fraud or other tortious misconduct" on the part of the Defendants.  *Int'l Ass'n of Iron Workers, Local 63*, 40 F. Supp. 2d. at 1006 (*quoting Merk v. Jewel Food Stores*, 945 F.2d 889, 899 (7th Cir.1991)).

Board determination.  The question that the Ninth Circuit had to answer was whether it could award damages **from the employer** for lost wages to the raided union, even though the Board certified the raiding union as representative.[4]  The Circuit refused to answer that question and instead held that the Board's representational decision does not automatically negate the no-raid agreement.  In doing so, it admitted: "There may be cases in which bad faith or predatory organizing practices are so patently offensive to the orderly resolution of interunion competition that recourse to damages should be available as a contractual remedy."  *Id.* at 878.  But Plaintiff has made no allegations here that even approach bad faith or predatory practices.

Injunctive relief is similarly unavailable to Plaintiff because the Norris LaGuardia Act prohibits federal courts from granting any injunctive relief in any case "involving or growing out of a labor dispute," unless one of only two very limited exceptions applies.  *See* 29 U.S.C. § 101. *Boys Markets, Inc. v. Retail Clerks Union, Local 770* established the first of such exceptions. 398 U.S. 235, 250 (1970).  As illustrated by the cases cited by Plaintiff, a *Boys Market* injunction may issue only when (1) a union strikes despite a no-strike clause in the CBA (2) over an issue governed by the CBA's dispute resolution clause.  *Catalytic, Inc. v. Monmouth & Ocean County Bldg. Trades Council*, 829 F.2d 430, 434 (3d Cir. 1987) (holding injunction should issue because hand billing triggered work stoppage related to grievance procedure in project labor agreement). Similarly, a "reverse *Boys Markets*" injunction may issue against the employer only when it engages in self-help over an issue within the scope of the CBA's grievance or dispute resolution procedures.  *See, e.g.*, *United Steelworkers v. Fort Pitt Steel Casting*, 452 F. Supp. 886, 890 (W.D. Pa. 1978) (agreeing with state court, upon removal, that court could enjoin employer's

---

[4] Federal labor law has developed significantly since this case was decided, and the pursuit of such damages after the Board awards work to or certifies another bargaining unit can now in itself constitute an unfair labor practice. *E.g.*, *Moore-Duncan v. Sheet Metal Workers Int'l Ass'n, Local 27*, 624 F. Supp. 2d 367 (D.N.J. 2008).

further refusal to pay health care premiums).  Clearly, neither of these exceptions are applicable

here, so the AC must be dismissed for failure to plead a claim for relief.

## CONCLUSION

For the foregoing reasons and the reasons set forth within the Defendants' principal brief,

the AC should be dismissed with prejudice.

Dated: October 10, 2023

Respectfully submitted,

/s/ John P. Sheridan
John P. Sheridan
Nicholas M. Graziano
Brian A. Jasinski
Mazzola & Mardon, P.C.
26 Broadway, 17th Floor
New York, New York 10004
T: (212) 425-3240
jsheridan@mmmpc.com
ngraziano@mmmpc.com
bjasinski@mmmpc.com

*Attorneys for Defendants International
Longshoremen's Association, ILA Local 1804-1, ILA Local
1233 and ILA Local 1235*

13

1003-611
135977

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2023, a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record, including Plaintiff's counsel, by operation of the court's electronic filing system.

Date:   October 10, 2023

/s/Brian A. Jasinski
Brian A. Jasinski

14

1003-611
135977