<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 825,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL LONGSHOREMEN'S ASSSOCIATION, INTERNATIONAL LONGESHOREMEN'S ASSOCIATION LOCAL 1233, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION 1235, and INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1804-1,<br><br>    Defendants. | No. 23cv3689 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff International Union of Operating Engineers, Local 825 ("Local 825") alleges that Defendants International Longshoremen's Association ("ILA") and International Longshoremen's Associations 1233 ("Local 1233"), 1235 ("Local 1235"), and 1804-1 ("Local 1804-1") ("ILA Locals") (collectively with ILA, "Defendants") breached a contract relating to two container cranes at the Port Newark Container Terminal (the "Terminal"). D.E. 5 ("FAC"). Defendants move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). D.E. 13. The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons below, the Court will **GRANT in part** and **DENY in part** Defendants' motion. The Court will exercise jurisdiction over the case and will, pursuant to Federal Rule of Civil Procedure 12(b)(6), **DISMISS without prejudice** the FAC's sole claim.

I.      **BACKGROUND**[1]

This case arises from the installation of two container cranes at the Terminal. FAC ¶ 9. Port Newark Container Terminal, LLC ("PNCT"), which operates the Terminal, "determined that it was necessary to install two new 'Ship to Shore' container cranes (the 'Cranes') at the Terminal . . . ." *Id.* ¶ 10. To that end, "sometime prior to December 2022, PNCT entered into a contract with Liebherr Container Cranes, Ltd. ('Liebherr'), whereby Liebherr agreed to manufacture, assemble[,] and erect the Cranes at the Terminal, and PNCT agreed to pay Liebherr for those services." *Id.*

Liebherr then entered into a subcontract with Bay Crane Services, Inc. ("Bay Crane"), "whereby Bay Crane specifically agreed to provide labor, equipment, materials[,] and services that were necessary to assemble and erect the Cranes at the Terminal." *Id.* ¶ 11. This labor included "(a) assisting in unloading shipments of equipment for the Cranes, (b) painting the Cranes, (c) mechanical assembly of the Cranes, (d) electrical assembly of the Cranes, and (e) erection of the Cranes (the 'Crane Project' or 'Project')." *Id.*

"At all times relevant herein, Bay Crane has been a party to a Collective Bargaining Agreement ('CBA') with Local 825." *Id.* ¶ 12. The CBA "covers workers engaged in the operation of power equipment (as defined in the CBA)" that provide various "work [that] as by custom has been performed by workmen in the fields of construction outlined in the CBA (the 'Covered Work'), anywhere within the State of New Jersey (including Port Newark)." *Id.* "The CBA contains specific provisions governing wages, hours, manpower referrals, manpower staffing, manning[,] and other working conditions of those Local 825 members that are employed

---

[1] This section derives mainly from the FAC. On a motion to dismiss, the Court accepts all well-pleaded facts as true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

by Bay Crane and perform Covered Work." *Id.* ¶ 14.  "The CBA was entered into for the purpose of[] . . . preserving work traditionally performed by Local 825 operating engineers, including work that should be performed by Local 825 at Port Newark." *Id.* ¶ 15.  Bay Crane is also a party to CBAs with two other labor unions: the International Union of Painters and Allied Trades, District Council 21, Local 1331 ("Painters Local 1331"); and the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers Local No. 11 ("Iron Workers Local 11"). *Id.*

In January 2023, Bay Crane contacted Local 825's business representative "to generally discuss the nature of the Crane Project, as well as the equipment and labor required to complete the Project." *Id.* ¶ 17.  Bay Crane then "(a) advised that the Crane Project was expected to take approximately twelve (12) to fourteen (14) weeks to complete, and (b) indicated that several Local 825 operators would be used to perform work on the Project." *Id.*  The Crane Project also required work covered by Bay Crane's CBAs with Painters Local 1331 and Iron Workers Local 11. *Id.* ¶ 18.

"The ILA Locals perform work at Port Newark[,]" including "maintenance, repairs and modifications of cranes located at the Port." *Id.* ¶¶20-21.  "Since the work to be performed on the Crane Project quite obviously involved cranes, Defendants[] . . . sought to specifically delineate the scope and duration of the work that the members of Local 825, Painters Local 1331[,] and Iron Workers Local 11 would perform at the Project." *Id.* ¶ 22.  Defendants did so to "maintain[] labor peace between Defendants and Local 825, Painters Local 1331[,] and Iron Workers Local 11." *Id.* ¶ 22.  To this end, "the ILA Locals caused and directed PNCT's Director of Engineering & Equipment Services, [Mr. Ferlisi], to contact Bay Crane and inform it that Defendants required all other trade union locals (including Local 825, Painters Local 1331[,] and Iron Workers Local 11),

3

to enter into an agreement with Defendants known as a Letter of Understanding (the 'Agreement' or 'LOU')." *Id.* ¶ 23.

"On January 18, 2023, Mr. Ferlisi presented Bay Crane with Defendants' request for the LOU." *Id.* ¶ 25. Then, on January 19, 2023, "Bay Crane presented Local 825 with Defendants' request for the LOU." *Id.* ¶ 26. Finally, on February 1, 2023, "Local 825 accepted Defendants' request, and entered into the LOU with Defendants." *Id.* ¶ 27. The LOU stated that it was "being provided to the [ILA] to confirm that Local 825 signatory(s) have been hired by OEM [original equipment manufacturer] Liebherr . . . to erect, assemble[,] and weld 2 Ship to Shore cranes arriving at PNCT starting March 2023." *Id.* ¶ 28. The LOU also stated that "Local 825 will not retain any jurisdiction for future maintenance, repairs[,] or modifications to this equipment outside of the contracted scope of this [P]roject, and once the cranes have been commissioned and accepted by PNCT." *Id.* Thus, the LOU acknowledges that Local 825 members would perform all Covered Work at the Project that was required by Liebherr and Bay Crane's subcontract. *Id.* ¶ 29.

Likewise, Painters Local 1331 and Iron Workers Local 11 entered similar LOUs with Defendants. *Id.* ¶¶ 30-31.

However, on or about June 2, 2023, Defendants threatened PNCT that "Defendants would strike or otherwise stop all work at Port Newark unless: (a) [all] Local 825 workers were removed from the Project, and (b) ILA workers were allowed to perform Local 825's work at the Project." *Id.* ¶ 34. PNCT conveyed this to Bay Crane, who then informed Local 825 that all Local 825 operators "must leave the Project immediately . . . ." *Id.* ¶¶ 36-37.

On July 10, 2023, Local 825 filed this suit against Defendants. D.E. 1. Local 825 amended its complaint as of right on July 19, 2023, pursuant to Federal Rule of Civil Procedure 15. *See* FAC. The FAC brings one count of breach of labor agreement pursuant to Section 301(a) of the

4

Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), alleging that Defendants breached the LOU by causing Local 825 to cease work on the Crane Project. *Id.* ¶¶ 53-62.

Defendants move to dismiss the FAC. D.E. 13-1 ("Mot."). Local 825 opposes. D.E. 22 ("Opp'n"). Defendants reply. D.E. 26 ("Reply").

## II. LEGAL STANDARDS

### A. Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (internal quotation marks omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the plaintiff's claims must be facially plausible, meaning that the well-pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In deciding the motion, "a court must consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the [plaintiff]'s claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### B. Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), may be raised at any time. *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *2 (D.N.J. Mar. 31, 2008). Rule 12(b)(1) challenges may be either facial or factual attacks. *Curlin Med. Inc. v. ACTA Med., LLC*, 2016 WL 6403131, at *2 (D.N.J. Oct. 27, 2016). If a defendant raises a factual attack, a court may consider evidence outside the pleadings, and no presumption of truthfulness attaches to the jurisdictional allegations in the complaint. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

## III. ANALYSIS

### A. The Existence of a Contract is Not a Jurisdictional Issue

"Section 301 of the LMRA grants federal jurisdiction over '[s]uits for violation of contracts between an employer and labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations.'" *Utility Workers United Ass'n, Local 537 v. Utility Workers' Union of Am.*, 75 F.4th 330, 334 (3d Cir. 2023) (quoting 29 U.S.C. § 185(a)).

Defendants first argue that if the Court finds that no contract exists, the Court should dismiss the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Mot. at 7-8. However, "[t]he existence of a contract is no longer a jurisdictional element of a [Section] 301 claim." *Id.* (citing cases). Rather, "[t]he existence of the contract is instead an element of the cause of action." *Id.*; *see also Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 189 (3d Cir. 2009) ("This Court has, in the past, noted that a prerequisite for [S]ection 301 jurisdiction is a contract between the employer and labor organization. . . . [T]his is no longer the case.").

6

Accordingly, even though the Court finds Local 825 fails to plausibly allege the existence of a contract, *infra* Section III(B), the Court will exercise jurisdiction over the FAC.

### B. Local 825 Fails to Plausibly Allege the Existence of a Contract

The LMRA "does more than confer jurisdiction in the federal courts over labor organizations." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 455 (1957). "It expresses a federal policy that courts should enforce the[] agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." *Id.* To further this policy, Section 301 "is not to be given a narrow reading." *Smith v. Evening News Ass'n*, 371 U.S. 195, 199 (1962). To determine whether a contract exists, "courts must look to federal labor relations law, not state contract law." *Mack Trucks, Inc. v. UAW*, 856 F.2d 579, 592 (3d Cir. 1988). "In order to reach a labor agreement, the parties must establish a meeting of the minds[] . . . and demonstrate that the parties agreed on the substantive terms and conditions of the contract." *Id.* (citations omitted). Courts should "look to the surrounding circumstances and to the parties' conduct manifesting an intention to abide by agreed-upon terms." *Id.* (cleaned up) (citing cases).

Defendants argue that Local 825 has not sufficiently pleaded the existence of a contract because the FAC "fail[s] to allege any specific language in the LOU that imposes any obligations on the ILA." Mot. at 9-10. And "[e]ven if the LOU imposed obligations on the ILA[,] there is nothing alleged in the [F]AC or written in the LOU that shows that the ILA assented to the language in the LOU." *Id.* at 10. Defendants attach a copy of the LOU,[2] which is a one-page document on Local 825's letterhead and states in full:

> On behalf of the International Union of Operating Engineers, Local 825 ("Local 825"), this letter of understanding is being provided to the International Longshoreman Association ("ILA") to confirm

---

[2] Because the LOU is integral to Local 825's allegations, the Court may consider it. *See Mayer*, 605 F.3d at 223.

7

> that Local 825 signatory(s) have been hired by OEM Liebherr Cranes to erect, assemble and weld 2 Ship to Shore cranes arriving at PNCT starting March 2023.
>
> This letter is to verify that Local 825 will not retain any jurisdiction for future maintenance, repairs[,] or modifications to this equipment outside of the contracted scope of this project, and once the cranes have been commissioned and accepted by PNCT.

D.E. 13-3.

Local 825 opposes, arguing that Defendants' assent can "reasonably be inferred from the fact that Defendants, once they became aware that Local 825 members would be performing work on the Crane Project, informed PNCT that any unions performing work on the project would need to provide Defendants with an LOU." Opp'n at 12-13. Thus, "[t]his request—made through PNCT, an agent Defendants conferred with the authority to negotiate the agreement at issue—effectively constituted an offer." *Id.* at 14. Local 825 characterizes the offer and acceptance as:

> [I]n exchange for an LOU from Local 825 agreeing not to perform any work at Port Newark beyond the scope of what was required specifically for the Crane Project, Defendants would forgo any right they might have under their own agreements with PNCT to protest or otherwise interfere with Local 825 members' performance of work otherwise covered by those agreements. To accept, Local 825 needed only to provide a LOU, the wording of which was provided by PNCT, at the behest of the Defendants.

*Id.* at 14-15. Additionally, Local 825 agrees "the LOU does not specify [Defendants'] obligations under the terms of the agreement[]" but argues this is not fatal to its claim because the "express language of the LOU itself . . . [does not] embody the entirety of the agreement." *Id.* at 14.

The Court agrees with Defendants. Though the Court does not discount that Defendants' request for the LOU and the LOU's language, in combination with other circumstances, could constitute an enforceable labor agreement, the FAC must still identify the source of Defendants' obligations and provide additional allegations as to what *does* "embody the entirety of the

8

agreement." *See id.* Though Local 825 cites cases permitting courts to infer enforceable labor agreements from a variety of circumstances, even in such cases, some level of detail about the parties' mutual obligations, and the source of these mutual obligations, is required. *See Retail Clerks Int'l Ass'n Local Union Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 23 (1962) (finding an enforceable contract where an agreement set forth the employer's promise to rehire striking employees, detailed wage and hour schedules, and the employer's commitment to follow a specified procedure); *Doubarn Sheet Metal, Inc. v. Sheet Metal Workers' Int'l Ass'n Local No. 19*, 547 F.2d 221, 224 (3d Cir. 1977) (finding an agreement to be bound by certain terms where the parties "incorporate[ed] . . . the precise terms" into their respective collective bargaining agreements); *Mack Trucks*, 856 F.2d at 592 (cleaned up) (finding the parties' conduct evidenced an intent to be bound after an agreement was reached after multiple in-person bargaining sessions, which ended with a "handshake meeting, congratulat[ing] each other on reaching a new agreement and discuss[ing] forthcoming ratification plans").

Accordingly, the Court will dismiss Local 825's breach of contract claim (Count One).

## C. It is Premature to Address Local 825's Available Remedies

Lastly, Defendants argue that Local 825 is not entitled to lost wages, punitive damages, or equitable relief because the limited circumstances in which these remedies are recoverable are not present. *See* Mot. at 13-14. However, it is premature to rule on issues of remedies at the motion to dismiss stage. *See, e.g.*, *Wright-Phillips v. United Airlines, Inc.*, 2021 WL 1221111, at *20 (D.N.J. Apr. 1, 2021) (noting that the availability of punitive damages "will turn on the evidence produced" and issues of remedies should be dismissed at this stage only "in the rare, clear case"); *In re Riddell Concussion Reduction Litig.*, 121 F. Supp. 3d 402, 424 (D.N.J. 2015) ("The court will consider appropriate relief only when liability is established.").

Accordingly, the Court will not rule on the relief available to Local 825 were it to succeed on its claim.

## IV.     CONCLUSION

For the reasons stated herein, the Court will **GRANT in part** and **DENY in part** Defendants' motion to dismiss. The Court will exercise jurisdiction over the case and will, pursuant to Federal Rule of Civil Procedure 12(b)(6), **DISMISS without prejudice** the FAC's sole claim. An appropriate Order accompanies this Opinion. Local 825 will have 30 days from the entry of the accompanying Order to file an amended complaint.

Dated: March 27, 2024

*Evelyn Padin*
Evelyn Padin, U.S.D.J.